**U.S. Department of Labor**     Office of the Solicitor
Washington, D.C. 20210



March 27, 2015

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
40 Foley Square
New York, NY  10007

Re:  *Cheeks v. Freeport Pancake House*, Docket No. 14-299

Dear Ms. Wolfe:

This Court asked the Secretary of Labor for the U.S. Department of Labor's views on issues presented in above-referenced case, which is currently pending before a panel of this Court.  In response, the Secretary files this letter brief addressing the question raised in this case: whether in a lawsuit between private parties brought pursuant to the Fair Labor Standards Act ("FLSA" or "the Act"), the parties may stipulate to the dismissal of FLSA claims with prejudice, without court approval, pursuant to Federal Rule of Civil Procedure 41(a)(1) ("Rule 41"), or whether the FLSA falls within the "applicable federal statute" exception to Rule 41.[1]  As discussed below, it is the Secretary's position that the FLSA falls within the "applicable federal statute" exception in this context, based on Supreme Court precedent, Congress's subsequent acceptance of that

---

[1]  Rule 41 states in relevant part:

Dismissal of Actions
    (a) Voluntary Dismissal.
    (1) By the Plaintiff.
      (A) Without a Court Order. <u>Subject to</u> Rules 23(e), 23.1(c), 23.2, and 66 and <u>any applicable federal statute</u>, the plaintiff may dismiss an action without a court order by filing:
            (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
            (ii) a stipulation of dismissal signed by all parties who have appeared.
      (B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Fed. R. Civ. P. 41 (emphases added).

    This brief does not address a Rule 41(a)(1) stipulation of dismissal *without prejudice*, an issue that is not present in this case and that would raise separate legal questions.

precedent, and the long-standing views of the U.S. Department of Labor ("the Department" or "DOL") that FLSA rights cannot be waived or compromised without supervision by the Department or approval by a court.

*Background*

1.  In August 2012, Dorian Cheeks ("Cheeks"), who worked at Freeport Pancake House ("Freeport Pancake"), filed a complaint in district court alleging that he was entitled to unpaid overtime wages, liquidated damages, and attorney's fees under the FLSA and New York Labor Law ("NYLL"). *See* Joint Appendix ("J.A.") A5 ¶¶ 1-3, 22. Cheeks further alleged that he was demoted and terminated in retaliation for complaining about Freeport's failure to pay him and others the wages that were owed to them. *See id.* ¶¶ 4-5. He sought back pay, front pay in lieu of reinstatement, and damages for pain and suffering for the unlawful retaliation. *See id.* ¶¶ 66-67. Freeport Pancake filed an answer, denying Cheeks' allegations and asserting affirmative defenses. *See id.* at A16-25.

2.  After an initial court conference and discovery, the parties reached a private settlement of the claims in the case. *See* Brief for Plaintiff-Appellant at 3. The parties filed a stipulation of dismissal on December 27, 2013, pursuant to Rule 41(a)(1)(ii), asserting that Cheeks' claims were being dismissed "with prejudice" and that he would be "barred from bringing another claim under the [FLSA] . . . for the period set forth in [his] Complaint." *Cheeks v. Freeport Pancake House & W.P.S. Indus.*, No. 2:12-CV-04199, ECF No. 15 (Dec. 27, 2013).

The district court issued an order to show cause, stating that "Plaintiff 'may not waive or otherwise settle [his] FLSA claim[s] for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement.'" J.A. A34-35 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), and collecting additional cases). The court ordered the parties to file a copy of the settlement agreement on the public docket and to show why the proposed settlement reflected a "'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Id.* at A35 (quoting *Martinez v. Ragtime Foods of N.Y., Inc.*, No. 11-CV-1483, 2011 WL 5508972, at *3 (E.D.N.Y. Nov. 10, 2011)). The district court further ordered the parties to provide additional information "in the form of affidavits or other documentary evidence explaining why the proposed settlement is fair and reasonable." *Id.* If the parties did not respond to the order to show cause, the district court stated, the case would be referred to the magistrate judge for discovery. *See id.* at A36.

The parties did not wish to disclose the terms of their settlement, and argued that court approval is not required to voluntarily dismiss a claim under Rule 41. *See* J.A. A26-32. The district court stayed the case and certified the question for interlocutory appeal. *See id.* at A32. This Court granted the motion for interlocutory appeal and oral argument was held on November 14, 2014.

*Discussion*

1.  The FLSA is a remedial and humanitarian statute. *See Farley v. Metro-North Commuter R.R.*, 865 F.2d 33, 35 (2d Cir. 1989). An express policy of the Act is "to correct and as rapidly as

practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. 202. The Act thus establishes a minimum wage, 29 U.S.C. 206(a), "to secure for the lowest paid segment of the nation's workers a subsistence wage," *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946). The FLSA also requires the payment of overtime compensation, 29 U.S.C. 207, "to remedy the 'evil of overwork' by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime," *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 576-78 (1942) (specifying the spread of employment as a consequence of reducing overtime)).

The Supreme Court has reasoned that in enacting the FLSA, Congress intended to establish a "uniform national policy of guaranteeing compensation for all work" performed by covered employees. *Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers*, 325 U.S. 161, 167 (1945) (internal quotation marks omitted). Consequently, the Court has held that "[a]ny custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights." *Id.* (internal quotation marks omitted). In addition, the Act applies even "to those who would decline its protections" because "employers might be able to use superior bargaining power to coerce employees . . . to waive their protections under the Act." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). Moreover, FLSA rights are not subject to waiver because these standards protect employers against unfair methods of competition in the national economy, another explicit purpose of the Act. *See* 29 U.S.C. 202(a); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 710 (1945) ("An employer is not to be allowed to gain a competitive advantage by reason of the fact that his employees are more willing to waive claims . . . than are those of his competitor.").

2. The rule requiring judicial scrutiny of litigants' FLSA settlements derives from the Supreme Court's decisions in *Brooklyn Savings* and *Gangi*, both of which interpreted the FLSA to preclude employees from waiving in a private settlement their right to recover the full amount of unpaid wages and damages required under the FLSA. In *Brooklyn Savings*, the Supreme Court granted certiorari in three cases to resolve questions under FLSA section 16(b) (the private right of action under the Act). *See* 324 U.S. at 699.[2] In the primary case, a former night watchman had accepted the Bank's offer to pay him the overtime compensation it determined he was owed, even though he had not brought a claim seeking those wages, in exchange for the watchman's release of all claims under the FLSA. *See id.* at 700, 703. The watchman subsequently brought suit to recover liquidated damages under section 16(b), which had not been paid under the agreement. *See id.* at 700. After determining that the release had not been given in settlement of a bona fide dispute, the Court held that the release was "invalid" and did not bar the watchman's subsequent action seeking liquidated damages. *Id.* at 704, 713.

---

[2] Section 16(b) provided at that time, and still provides, that "[a]ny employer who violates the provisions of section 6 or section 7 of this [Act] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. 216(b).

The Court's rationale was based on the policies underlying the FLSA, as it noted that a statutory right "conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Sav.*, 324 U.S. at 704. With respect to the legislative policy embodied in the FLSA, the Court stated as follows:

> The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided. Neither petitioner nor respondent suggests that the right to the basic statutory minimum wage could be waived by any employee subject to the Act. No one can doubt but that to allow waiver of statutory wages by agreement would nullify the purposes of the Act. We are of the opinion that the same policy considerations which forbid waiver of basic minimum and overtime wages under the Act also prohibit waiver of the employee's right to liquidated damages.

*Id*. at 706-07 (internal footnote omitted).

The Supreme Court rejected Brooklyn Savings' argument that statutory language regarding compromise and waiver similar to the provisions that existed in other federal employment statutes (either specifically prohibiting waiver of rights or providing the method under which compromises and settlements can be approved) was necessary to impose restrictions on private settlements. *See Brooklyn Sav.*, 324 U.S. at 712-13. The Court explained that "[t]he decision in the instant case is based on the legislative policy behind this enactment and issues arising under other acts having different legislative backgrounds are not conclusive in determining the legislative intent with respect to the Fair Labor Standards Act." *Id.* at 713.

The Court's decision did not address the validity of agreements to resolve claims where there *is* a bona fide dispute between the employer and the employee leading to compromise and settlement. *See Brooklyn Sav.*, 325 U.S. at 714. The following year, however, in *Gangi*, 328 U.S. at 111-12, the Court expanded its holding in *Brooklyn Savings* to include a bona fide dispute over coverage under the Act. The employer in *Gangi* paid all the overtime compensation it allegedly owed and "obtained a [written] release under seal signed by the [plaintiffs]," but the plaintiffs nevertheless filed suit to collect liquidated damages under the FLSA. *Id*. at 111-12. The Court held:

> [T]he remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage. Nor do we need to consider here the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment. The reasons which lead us to conclude that compromises of real disputes over coverage which do not require the payment in full of unpaid wages and liquidated damages do not differ greatly from those which led us to condemn the waivers of liquidated damages in the *O'Neil* case.

*Id.* at 114-15 (footnote omitted). In dictum, the Court indicated that stipulated judgments were on surer footing than private settlements, stating that "by the simple device of filing suits and entering agreed judgments, we think the requirement of pleading the issues and *submitting the judgment to judicial scrutiny* may differentiate stipulated judgments from compromises by the parties." *Id.* at 113 n.8 (emphasis added). Subsequently, in *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981), which involved the question whether an employee could bring an FLSA claim in federal court after unsuccessfully pursuing it as a grievance under a collective bargaining agreement, the Court reaffirmed that its "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." 450 U.S. at 740 (quoting *Brooklyn Sav.*, 324 U.S. at 707).

3. Within a few years after *Brooklyn Savings* and *Gangi*, Congress enacted legislation specifically addressing the compromise and waiver of FLSA claims, which accepted and built upon the holdings of *Brooklyn Savings* and *Gangi*.

First, Congress amended the FLSA in the Portal-to-Portal Act of 1947 ("the Portal Act"), Pub. L. No. 80-49, 61 Stat. 84. The Portal Act was motivated by concerns about the volume of litigation that had resulted from earlier Supreme Court decisions interpreting the FLSA expansively, such that preliminary and postliminary work activities were deemed compensable. *See Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516-17 (2014). At that time, employers were exposed to significant liability for back pay and liquidated damages arising from such suits. *See id.* at 516; *see also* 29 U.S.C. 251(a) ("Congress finds that the [FLSA] has been interpreted judicially . . . [to] creat[e] wholly unexpected liabilities, immense in amount . . . upon employers[.]").

Congress thus expressly authorized the compromise and waiver of claims that had accrued *prior to* the enactment of the Portal Act but left undisturbed for prospective claims the rule announced in *Brooklyn Savings* and *Gangi*. Section 3 of the Portal Act allows an employee to "compromise[] in whole or in part" "[a]ny cause of action under the [FLSA] . . . which accrued prior to May 14, 1947," and "any action (whether instituted prior to or on or after May 14, 1947) to enforce *such* a cause of action" so long as a "bona fide dispute [exists] as to the amount payable by the employer" and the compromise does not provide less than the minimum wage or overtime owed. 29 U.S.C. 253(a) (emphasis added). Congress's use of the term "*such* a cause of action" in section 3(a) refers directly back to the provision's earlier reference to causes of action under the FLSA which "accrued prior to May 14, 1947," thus making clear that section 3 (like several other provisions of the Portal Act) simply addressed FLSA liability arising before enactment of the Portal Act. 29 U.S.C. 253(a); *see* H.R. Conf. Rep. No. 80-326, at 12 (1947) (explaining that this provision "lays down no rule as to compromises or waiver with respect to causes of action hereafter accruing" and that "[t]he validity or invalidity of such [later-in-time] compromises or waivers is to be determined under law other than [section 3]"). With respect to that liability, section 3 provides that "[a]ny employee may hereafter waive his right under the [FLSA] to liquidated damages, in whole or in part, with respect to activities engaged in prior to May 14, 1947," 29 U.S.C. 253(b), and that (with qualifications not relevant here) "[a]ny such

compromise or waiver . . . shall . . . be a complete satisfaction of [the employee's] cause of action and a complete bar to any action based on such cause of action," 29 U.S.C. 253(c). As Senator Donnell explained, "we have recognized in our bill, by not making the provision for compromise and settlement applicable to the future, that there is a grave danger of placing a provision of that kind in the bill as to future activities, because such a provision might well result, as in the case of the Brooklyn National Savings Bank, in the utter demolition of the Fair Labor Practices Act." 93 Cong. Rec. 2121 (1947). By explicitly limiting the category of FLSA claims that could be compromised by employees only to those that had accrued prior to May 14, 1947, Congress accepted the application of the *Brooklyn Savings/Gangi* non-waiver rule to future FLSA claims.[3]

Second, in 1949, Congress enacted section 16(c) of the FLSA, which vests the Secretary of Labor with authority to "supervise the payment of unpaid minimum wages or the unpaid overtime compensation" due under the Act. *See* Fair Labor Standards Amendments of 1949, Pub. L. No. 81-393, § 14, 63 Stat. 910, 919 (codified at 29 U.S.C. 216(c)). Section 16(c) then specifies that "the agreement of any employee to accept such [a Department-of-Labor supervised] payment" shall, upon payment in full, "constitute a waiver by such employee" of the employee's right under section 16(b) to bring suit for unpaid wages and liquidated damages. 29 U.S.C. 216(c); *see* S. Rep. 81-640 (1949), *reprinted in* 1949 U.S.C.C.A.N. 2241, 2247. This legislative provision for the Department's supervision of FLSA settlements that will operate to waive the employee's FLSA claims confirms the teachings of *Brooklyn Savings* and *Gangi* that employees cannot waive their FLSA rights on their own. If employees could do so, Congress's provision for the Department's supervision of settlements that validly waive FLSA claims when paid would have little, if any, practical import. Thus, Congress's legislative Acts in the years

---

[3]  The majority view with which the Department concurs, primarily based on the plain text, is that section 3 of the Portal Act, 29 U.S.C. 253, applies only to claims that accrued prior to the Portal Act. *See* 12 Fed. Reg. 7655, 7668 (Nov. 18, 1947) (former DOL regulation at 29 C.F.R. 790.27 interpreting Portal Act section 3 to "authorize compromise only of those causes of action accruing prior to May 14, 1947" because "the statute does not change existing law with respect to any cause of action accruing after the date of the enactment of the act") (internal footnotes omitted); *The Fair Labor Standards Act*, § 1.IV.A.2 at 21 (Ellen C. Kearns et al. eds., 1999) (the Portal Act amendment codified at 29 U.S.C. 253 is "retroactive" only); Marc Linder, *Class Struggle at the Door: The Origins of the Portal-to-Portal Act of 1947*, 39 Buff. L. Rev. 53, 137, 148 (1991) (explaining that the initial House bill would have allowed all claims to be "waived, compromised, adjusted, settled, or released[,]" but the Senate version of the bill that was ultimately adopted by the conference committee did not extend compromise and settlement to future actions) (internal quotation marks omitted). Some courts, however, have construed this provision differently notwithstanding the text of section 3. *See Archer v. TNT USA*, *Inc.*, 12 F. Supp. 3d 373, 382 (E.D.N.Y. 2014) ("Some courts [including the Eleventh Circuit] have interpreted 29 U.S.C. § 253 as applying only to actions which accrued prior to May 14, 1947, the date the Portal-to-Portal Act became effective. . . . Other courts [including the Fifth Circuit] have assumed that § 253 was intended to abrogate *O'Neil* and *Gangi* and have applied the statute without restriction.") (internal quotation marks and citation omitted).

6

immediately following *Brooklyn Savings* and *Gangi* confirmed and built upon the limitations that those decisions place on an employee's ability to waive FLSA claims in a private settlement.

4. These seminal Supreme Court cases, which laid the foundation for Congress's subsequent revisions to the legislative scheme, form the basis of the majority view in the courts of appeals that FLSA rights can only be waived or compromised where employees make claims and there is a bona fide dispute culminating in either DOL supervision or court approval of the agreed-upon settlement. The leading decision articulating that rule is *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). In *Lynn's Food*, the Department found after investigation that Lynn's Food had violated the FLSA's minimum wage and overtime provisions and that it was therefore liable to its employees for back wages totaling more than $10,000, as well as liquidated damages. *See* 679 F.2d at 1352. After Lynn's Food's attempts to negotiate a settlement with DOL failed, Lynn's Food approached its employees directly, offering them $1,000 collectively in exchange for their release of all claims arising under the FLSA. *See id.* Fourteen Lynn's Food employees signed the agreement, and Lynn's Food subsequently sought judicial approval of the settlement in district court. *See id.* The Eleventh Circuit affirmed the district court's dismissal of Lynn's Food's action on the ground that the settlements violated the FLSA. *See id.* The court held that employees can only compromise their FLSA back wage claims in two specific ways. *See id.* First, under section 16(c) of the statute, employees may waive their right to FLSA compensation by accepting payment of unpaid wages if that payment is made under the supervision of the Secretary of Labor and the back wages are paid in full. *See id.* at 1353. Second, when employees bring a private action against their employer under section 16(b), the court may enter a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* Because Lynn's Food's agreements did not fall within either category, as they were not supervised by the Department and were not entered as a stipulated judgment in an action brought by the employees, the court held that they could not be approved. *See id.*

In reaching its conclusion, the Eleventh Circuit relied on the policy considerations underlying the Supreme Court's decisions in *Brooklyn Savings* and *Gangi*: "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food*, 679 F.2d at 1352. The facts in *Lynn's Food* presented a stark example to the Eleventh Circuit of the result of such unequal bargaining power. *See id.* at 1354. The employees, some of whom did not speak English, were apparently unaware of the Department's determination that Lynn's Food owed them over $10,000, and a transcript of the settlement proceedings revealed "a virtual catalog of the sort of practices which the FLSA was intended to prohibit," such as the Lynn's Food's representative repeatedly suggesting that the employees were not entitled to unpaid wages and that only "malcontents" would accept the back pay. *Id.*

In contrast with the procedural posture in *Lynn's Food* where the employer privately bargained with its employees over wages owed under the FLSA and then unilaterally sought judicial imprimatur, the Eleventh Circuit explained the reasoning behind allowing courts to approve settlements where the employees themselves bring suit under the FLSA. *See* 679 F.2d at 1354. In such cases, the court opined, there is some assurance of an adversarial context because the employees are likely to be represented by counsel, and therefore "the settlement is more likely to

reflect a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.* Whether the employee is represented by counsel or not, however, approval by the courts is required. The Eleventh Circuit recently reaffirmed its holding in *Lynn's Food*, extending it to cover settlement of suits brought by former employees as well as current employees. *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013).[4]

The Eighth Circuit has adopted the Eleventh Circuit's rule. In *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008), the Eighth Circuit stated that "FLSA rights are statutory and cannot be waived." The only exceptions, according to the court, are where the Secretary supervises payment of unpaid wages pursuant to section 16(c) or where a stipulated judgment is entered in a suit brought directly against a private employer under section 16(b). *See id.* (citing *Lynn's Food*, 679 F.2d at 1353); *see also Beauford v. ActionLink, LLC*, __ F.3d __, Nos. 13-3265, 13-3380, 2015 WL 1260453, at *7 (8th Cir. Mar. 20, 2015). The Seventh Circuit has also endorsed *Lynn's Food*, explaining that:

> [T]he Fair Labor Standards Act is designed to prevent consenting adults from transacting about minimum wages and overtime pay. Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay. Otherwise the parties' ability to settle disputes would allow them to establish sub-minimum wages. Courts therefore have refused to enforce wholly private settlements.

*Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food*, 679 F.2d at 1352). The Sixth and Fourth Circuits have also acknowledged that waiver of an FLSA claim in a private settlement is not valid. *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007); *McConnell v. Applied Performance Techs., Inc.,* 98 Fed. App'x 397, 398 (6th Cir. 2004).[5] By contrast, in *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir.), *cert. denied*, __ U.S. __ , 133 S. Ct. 795 (2012), the Fifth Circuit upheld a

---

[4] The Eleventh Circuit has indicated that where an employer tenders the full amount of unpaid wages claimed by an employee and the employee concedes that the claim is therefore moot, this may not represent a "formal settlement agreement" that would need to be approved by a court. *See Dionne v. Floormasters Enter., Inc.*, 667 F.3d 1199, 1205 (11th Cir. 2012). However, in *Floormasters*, the court did not rule that settlements in full satisfaction of the plaintiff's claim should not be subject to scrutiny pursuant to *Lynn's Food*. *Id.; accord Silva v. Miller*, 307 Fed. App'x 349, 351 (11th Cir. 2009) (per curiam) ("On its face, *Lynn's Food* suggests no exception to judicial oversight of settlements when the employee receives all wages due; . . . We do not say what, if any, judicial oversight applies under *Lynn's Food* when full satisfaction of the FLSA claim is made.").

[5] The Federal Circuit has also recognized that *Lynn's Food* applies to private-sector employees, but it has held that the same settlement-approval rules do not apply to federal-sector collective bargaining agreements. *See O'Connor v. United States*, 308 F.3d 1233, 1244 (Fed. Cir. 2002).

release of FLSA claims brought about by a private settlement between the employer and a union.[6]

5. The Department has repeatedly expressed its view that FLSA settlements between private parties must be supervised by the Department or approved by a court. Over three decades ago, in response to the employer in *Lynn's Food* attempting to obtain subsequent judicial approval for the invalid releases it had obtained from its workers, the Department explained that "the only way an employer can obtain judicial sanction of a compromise settlement of the amount of the employees' back wages is by submitting to a court a proposed consent judgment in a §16(b) suit brought by the employees against the employer to recover for alleged FLSA violations." *Lynn's Food*, Brief for the Sec'y of Labor at 13. In a 1988 Senate hearing on waivers under the Age Discrimination in Employment Act ("ADEA"), the Solicitor of Labor and the Assistant Secretary for the Employment Standards Administration "made clear that the Secretary of Labor does not recognize as valid any waiver of FLSA rights that is not supervised either by the Secretary pursuant to section 16(c) (or, in the case of a private action filed under section 16(b)) by a federal court." H.R. Rep. No. 101-664, at 17-18 (1990) (citing *Age Discrimination in Employment Act - Waiver of Rights*, S. Hrg. No. 100-717 Before the Subcomm. on Labor of the S. Comm. on Labor & Human Res., at 110-15 (1988)).[7]

---

[6] Most district courts that have addressed the issue follow *Lynn's Food*, even in the absence of binding circuit precedent. *See, e.g., Bettger v. Crossmark, Inc.*, No. 1:13-CV-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015) ("Although the Third Circuit has not addressed whether such § 216(b) actions claiming unpaid wages may be settled privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary"); *Duprey v. The Scotts Co., LLC*, 30 F. Supp. 3d 404, 407-08 & n.2 (D. Md. 2014) (noting that most judges in the Fourth Circuit follow *Lynn's Food* but "the precedent in this Circuit is unclear as to whether court approval is *required* in cases subject to dismissal under Fed. R. Civ. P. 41(a)(1)(A)"); *Snook v. Valley Ob-Gyn Clinic, P.C.*, 14-cv-12302, 2014 WL 7369904, at *1-2 (E.D. Mich. Dec. 29, 2014); *Carrillo v. Dandan, Inc.*, CV 13-671, 2014 WL 2890309, at *4-5 (D.D.C. June 26, 2014); *Peralta v. Soundview at Glen Cove, Inc.*, No. 11-CV-0867, 2013 WL 2147792, at *1 (E.D.N.Y. May 16, 2013) ("It is well settled in [the Second] Circuit that judicial approval of . . . FLSA settlements is required."); *Till v. Saks Inc.*, No. C 11-00504, 2014 WL 1230604, at *1 (N.D. Cal. Mar. 21, 2014); *Peterson v. Mortg. Sources Corp.*, No. 08-2660-KHV, 2011 WL 3793963, at *4 (D. Kan. Aug. 25, 2011); *but see, e.g., Sarceno v. Choi*, No. 13-1271, 2014 WL 4380680, at *10-11 (D.D.C. Sept. 5, 2014) ("The Court concurs with the reasoning of the Fifth Circuit in *Martin* that a private settlement of FLSA claims may be enforceable, even if the settlement was reached without United States Department of Labor or judicial supervision or approval, but only when the agreement resolves a bona fide dispute between the parties and the terms of the settlement are fair and reasonable"); *Picerni v. Bilingual Seit & Preschool, Inc.*, 925 F. Supp. 2d 368, 369-79 (E.D.N.Y. 2013) (rejecting the rule that court approval is required for FLSA settlements in the first instance in favor of a rule that would examine the fairness of such settlements and validity of a waiver in subsequent litigation, if there is any).

[7] When Congress amended the ADEA in 1990 to include numerous specific requirements governing the waiver of ADEA claims, *see* Older Workers Benefit Protection Act, Pub. L. 101-

The Department also expressed this view in *Taylor v. Progress Energy*, a case in which the Fourth Circuit analogized Family and Medical Leave Act ("FMLA") waivers to FLSA waivers, holding that FMLA waivers of rights (both prospective and retrospective) were prohibited "in the absence of prior approval of the DOL or a court." *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 371 (4th Cir. 2005), *reh'g granted & judgment vacated* (2006), *judgment reinstated*, 493 F.3d 454 (2007), *cert. denied*, 554 U.S. 909 (2008). Arguing that the Fourth Circuit's interpretation of the applicable FMLA regulation was incorrect, the Department distinguished waiver under the FLSA from waiver under other protective employment legislation:

> The judicial prohibition against private settlements, and consequent requirement that all FLSA settlements must be approved by the Department or a court . . . is based on policy considerations unique to the FLSA. The FLSA is a broad remedial statute setting the floor for minimum wage and overtime pay. *See Brooklyn Sav. Bank,* 324 U.S. at 706. It was intended to protect the most vulnerable workers who lacked the bargaining power to negotiate a fair wage or reasonable work hours with their employers. *Id.* at 706-07. Based on the courts' perception of the characteristics of the workers protected by the FLSA, it is virtually alone among federal employment statutes in its restriction on settlements.

Brief for the Sec'y of Labor as Amicus Curiae in Support of Pet. for Reh'g En Banc, *Taylor v. Progress Energy, Inc.*, 493 F.3d 454 (4th Cir. 2007) (No. 04-1525), 2005 WL 6718391, at *13. The United States also filed an amicus brief at the Supreme Court's invitation recommending that the petition for certiorari in *Progress Energy* be denied, stating the following:

> DOL's interpretation of the regulation as barring only prospective waiver of FMLA rights is consistent with this Court's decisions in employment-law cases disfavoring prospective waivers of rights while encouraging the settlement of claims. . . . The sole exception is for FLSA claims. The court of appeals stressed the FLSA analogy and followed decisions of this Court prohibiting private settlements of FLSA claims. That reasoning was erroneous. First, the prohibition against private FLSA settlements is based on policy considerations unique to that statute. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 114-115 (1946); *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-707 (1945). The FLSA is a broad remedial statute setting the floor for minimum wage and overtime pay and was intended to protect the most vulnerable workers, who lacked the bargaining power to negotiate a fair wage or reasonable work hours with their employers. See *id.* at 706-07. By contrast, the policy considerations underlying the settlement of FMLA claims are much more akin to those underlying Title VII, the ADA, and the ADEA, all of which have been construed to permit unsupervised settlement of claims. Like those statutes, the FMLA is not

---

433, § 201, 104 Stat. 978, 988 (codified at 29 U.S.C. 626(f)), it was clear that Congress viewed FLSA waivers as distinct from ADEA waivers, in that FLSA rights could not be privately waived absent Department supervision or court approval, *see* H.R. Rep. No. 101-664, sec. (B)(2) (1990).

primarily focused on hourly-workers and their wages, but protects all segments of the
workforce, from low-wage workers to highly paid professionals.

Brief for the United States as Amicus Curiae, *Taylor v. Progress Energy, Inc.*, 554 U.S. 909
(2008) (No. 07-539), 2008 WL 2095733, at *13-14 (citations and internal footnote omitted).

The Department reiterated its position regarding FLSA settlements as compared to settlements
under other employment statutes in the final rule amending the FMLA regulations in 2008:

> The judicial prohibition against private settlements under the FLSA is based on policy
> considerations unique to the FLSA.  The FLSA is a remedial statute setting the floor for
> minimum wage and overtime pay.  It was intended to protect the most vulnerable
> workers, who lacked the bargaining power to negotiate a fair wage or reasonable work
> hours with their employers.  The judicially-imposed restrictions on private settlements
> under the FLSA have not been read into other employment statutes that reference the
> FLSA and should not be read into the FMLA.

Family & Medical Leave Act of 1993, 73 Fed. Reg. 67,934, 67,987 (Nov. 17, 2008).

The Department recently addressed the prohibition against waivers of FLSA claims in *Boaz v.
FedEx Customer Information Services, Inc.*, 725 F.3d 603, 607 (6th Cir. 2013), where the Sixth
Circuit held that an employment agreement could not shorten the statute of limitations for
bringing an FLSA claim because that would operate as a waiver of that claim.  The amicus brief
filed jointly by the Department and the Equal Employment Opportunity Commission reiterated
that the "FLSA is unique . . . because it . . . prohibits the private settlement of *existing* claims
absent supervision from the Department of Labor or authorization by a court."  Brief for the
Sec'y of Labor & Equal Emp't Opportunity Comm'n as Amici Curiae in Support of Plaintiff-
Appellant, *Boaz v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603 (6th Cir. 2013) (No. 12-
5319), 2012 WL 2953029, at *19.

6.  No circuit has addressed the specific question presented in this case as to whether and to what
extent the FLSA falls within the "applicable federal statute" exception to Rule 41, nor has the
Department previously addressed the interplay between Rule 41 and the rules regarding
settlement of FLSA claims.[8]  However, as explained above, the courts, Congress, and the

---

[8]  The "applicable federal statute" exception in Rule 41(a)(1)(A) is not specifically discussed in
the Advisory Committee Notes beyond a statement that the rule "preserve[s]" provisions in
statutes such as 8 U.S.C. 1329 (immigration violations) and 31 U.S.C. 3730 (qui tam actions),
which explicitly require court approval for a dismissal.  Fed. R. Civ. P. 41 Advisory Comm.
Notes, 1937 Adoption.  An example of a statute that has been found to be an exception to Rule
41 is the Prison Litigation Reform Act, which does not contain explicit language regarding court
approval prior to dismissal, but which courts have recognized restricts litigants' right to dismiss
an action without a court order under Rule 41(a) due to the statute's requirement that cases be
screened for frivolousness under a "three strikes" provision.  *See, e.g., Large v. Beckham Cnty.
Dist. Ct.*, 558 Fed. App'x 827, 828 (10th Cir. 2014); *Glenn v. Gillis*, No. 5:12-cv-133, 2012 WL
3240674, at *3 (N.D. Fla. July 11, 2012).

Department have recognized over the course of many years that private compromises of FLSA rights are subject to unique oversight in order to effectuate the statutory intent to provide subsistence wages to the lowest-paid workers, and to provide a wage floor to prevent unfair competition among employers. These longstanding rules would be undermined if the FLSA is not considered to come within the "applicable federal statute" exception under Rule 41 insofar as the rule permits private parties to stipulate without any court approval to the dismissal *with prejudice* of their FLSA claims. Rule 41(a)(1)(B) states that if the parties' stipulation of dismissal does not otherwise specify, a Rule 41(a)(1) dismissal is without prejudice, but it permits the parties to stipulate to a dismissal with prejudice. If Rule 41(a)(1) were to permit private parties in FLSA suits to dismiss their claims with prejudice, such dismissals would preclude a plaintiff from later bringing an FLSA claim. The employee would thus be waiving FLSA rights without any court or Department of Labor oversight, an outcome that would contravene established FLSA law.

As the Supreme Court opined in *Gangi*, stipulated judgments guard against the danger of allowing employees with inferior bargaining power to compromise their statutory rights under the FLSA because they require "submitting the judgment to *judicial scrutiny*." 328 U.S. at 113 n.8 (emphasis added). Although this statement is dictum, it should nevertheless be given proper consideration. *See United States v. Oakar*, 111 F.3d 146, 153 (D.C. Cir. 1997) ("'[C]arefully considered language of the Supreme Court, even if technically *dictum*, generally must be treated as authoritative[.]'") (quoting *Doughty v. Underwriters at Lloyd's*, 6 F.3d 856, 861 n.3 (1st Cir. 1993)). In other words, merely filing a stipulation of dismissal to dismiss private FLSA claims with prejudice – even where parties are represented by counsel – is not sufficient.

The Department notes that, as courts have recognized, being represented by counsel does not always, or necessarily, ensure fairness for low-wage workers who "often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 40 (E.D.N.Y. 2014); *see, e.g., Nall*, 723 F.3d at 1306 (plaintiff agreed to accept the employer's out-of-court settlement offer because the employer was "pressuring her" and she "was homeless at the time and needed money"); *Walker v. Vital Recovery Servs., Inc.*, 300 F.R.D. 599, 600 n.4 (N.D. Ga. 2014) (many of the plaintiffs in an FLSA collective action accepted offers of judgment for $100 because they were "unemployed and desperate for any money they can find"); *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 632 (W.D. Tex. 2005) (plaintiff accepted one-third of the overtime compensation he believed he was owed under duress because his wife was terminally ill and he needed money to fix his truck). Nor is there any assurance that the plaintiff's attorney will not "keep the lion's share of the proceeds" as part of the settlement agreement. *See Socias*, 297 F.R.D. at 41. Also, there is no guarantee that a plaintiff's attorney will not collude with the employer to achieve a resolution that is in the employer's interest. *See, e.g., Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 134441, at *1-2, 8-9 (N.D. Cal. Jan. 16, 2007) (a worker was pressured to drop his claims and replace his previous counsel, who had "got too close to establishing Defendant's wrong-doing," with new counsel who was being represented by the employer's counsel in another action, presenting "an example of the kind of employer abuse of superior bargaining power" that the Supreme Court has decried). Moreover, requiring judicial approval of settlements has a deterrent effect, as it "provides an incentive for [employers] to engage in

meaningful settlement negotiations with employees and encourages their future compliance with the Act." *Socias*, 297 F.R.D. at 41.

For many of these reasons, several district courts have determined that the FLSA is one of the "applicable federal statutes" that limits Rule 41(a)(1). *See, e.g., Armenta v. Dirty Bird Group, LLC*, No. 13cv4603, 2014 WL 3344287, at *3 (S.D.N.Y. June 27, 2014); *Socias*, 297 F.R.D. at 40-41; *Wolinsky*, 900 F. Supp. 2d at 340-41; *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10cv303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011); *Dees v. Hydrady, Inc.*, 706 F. Supp. 2d 1227, 1244-47 (M.D. Fla. 2010); *but see Picerni*, 925 F. Supp. 2d at 379 (concluding that requiring court approval before permitting the parties to dismiss an FLSA action "runs afoul" of Rule 41).

*Conclusion*

While the Department is sensitive to the potential burdens placed on its own caseload and that of the judiciary, as well as the general interest in efficient resolution of disputes, the unique purpose of the Act – "to secure for the lowest paid segment of the nation's workers a subsistence wage," *Gangi,* 328 U.S. at 116 – and the unequal bargaining power between employers and employees that is prevalent today, just as it was in 1945 when the Supreme Court first examined these issues, warrant judicial scrutiny of a private settlement prior to a stipulation to dismiss FLSA claims with prejudice.

For the foregoing reasons, the Department submits that the FLSA falls within the "applicable federal statute" exception to Rule 41, such that parties in a private lawsuit brought pursuant to the FLSA may not stipulate to the dismissal of FLSA claims with prejudice without court approval.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

s/Laura Moskowitz
LAURA MOSKOWITZ
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
200 Constitution Ave., NW, Room N-27l6
Washington, D.C. 20210
(202) 693-5555